IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| A.R.,<br>JAMIE RILEY AND ALAN RILEY ON BEHALF )<br>OF THEIR SON )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>SCHOOL ADMINISTRATIVE UNIT #23, )<br>AND INTERIM SUPERINTENDENT )<br>DR. DONALD A. LAPLANTE IN HIS )<br>OFFICIAL CAPACITY )<br>    Defendant. ) | Docket No.<br><br>COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiffs, A.R., a minor, and his parents Jamie and Alan Riley, seek relief for the Defendant's violation of the Americans with Disabilities Act, 42 USC § 12101, *et. seq.*, and the Rehabilitation Act, 29 USC § 794, Section 504, in that Defendant did, intentionally and willfully, fail to provide Plaintiffs with reasonable accommodations for A.R.'s disabilities. Plaintiffs seek injunctive relief, compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as the law allows and this Court deems equitable, just and appropriate.

**JURISDICTION**

2. This Court has Federal Question Jurisdiction pursuant to 28 USC § 1331, as this action is based upon two important federal statutes: the Americans with

Disabilities Act, Title II, 42 USC § 12131 *et. seq*. and the Rehabilitation Act, 29 USC §794, Section 504.

3. This Court has authority to provide declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

4. The Plaintiffs request that this Court exercise supplemental jurisdiction over the State court causes of action named herein as they arise from the common nucleus of operative facts.  28 USC § 1367.

## VENUE

5. Venue is proper in the United States District Court for the District of New Hampshire pursuant to 28 USC §1391(b) and (c) as the Defendants' educational facility is based in New Hampshire, Plaintiffs were at all relevant times, and are currently New Hampshire residents and the core nucleus of operative facts occurred within this venue.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each of the causes of action.

## PARTIES

7. Plaintiff A.R. is a minor and at all relevant times was a resident of No. Haverhill, Grafton County, New Hampshire.  A.R. is, and at all times relevant to this action was, a qualified individual with disabilities under the definitions of the Rehabilitation Act and the Americans with Disabilities Act.

8. Defendant School Administrative Unit 23 is a local agency, a school district  located at 2975 Dartmouth College Highway, North Haverhill, New Hampshire 03774.

9. Dr. Donald A. LaPlante serves as Interim Superintendent of defendant School Administrative Unit 23.

## FACTS

### A. A.R. has severe, intractable seizure disorder, developmental delays and a host of additional medical conditions.

10. A.R. has a complicated medical history, having been diagnosed with a severe seizure disorder, development delay, cortical vision impairment, low vision and congenital bilateral moderate-to-severe sensorineural hearing loss among other maladies.

11. A.R.'s complex seizure disorder causes events called drop seizures - a complete loss of muscle tone that results in him falling down. Carina, A.R.'s service dog, prescribed by a doctor, has been trained to perceive when these seizures are going to occur. The dog then alerts prior to the onset of the loss of A.R.'s muscle control. By alerting adults, A.R. can be directed to a safe location and decrease the chance that an injury will result. Additionally, by tethering A.R. to Carina, A.R.'s balance is aided and he gains greater independence.

### B. Carina is a Certified Service Dog Trained to Perform Tasks for the Benefit of A.R

12. In May 2010, A.R. was paired with his service dog, Carina, which was trained by 4 Paws for Ability, located in Dayton, Ohio. 4 Paws for Ability is a non-profit community-based organization which trains dogs to become service animals. 4 Paws for Ability provides unique training to dogs to help with seizure disorders.

13. Carina has over 800 hours of specialized training to pre-alert to Andrew's seizures. Additionally, in October 2010 A.R. and his family participated in 11 days of intensive training in Ohio with Paws for Ability. The primary focus of this training was to help

the bond form between A.R. and Carina and to instruct the family on commands needed to enable A.R. to benefit from Carina's services.  During this training, Carina was with A.R. at all times.

14. As a prerequisite to taking Carina home, 4 Paws for Ability also taught A.R's family to train others on how to effectively work with Andrew and Carina as a team.

1. **Carina is trained to pre-alert to an oncoming seizure.**

15. Carina pre alerts to an oncoming seizure to warn others who will ensure Andrew is seated safely until after the seizure occurs.  This is extremely important as A.R.'s seizures can cause serious injury. Before A.R. seizures, Carina will lick A.R. alerting others to the likely oncoming seizure and signaling the need to get A.R. into a safe position to prevent a drop seizure.  To encourage proper alerting, Carina is given a dog treat as positive reinforcement.

2. **Carina provides a tremendous amount of psychological benefit.**

16. Additionally, A.R.'s environment, and the people in it, constantly changes causing discord for this young boy who has difficulty both seeing and hearing.  Carina is a constant presence in A.R.'s life.  Carina's presence helps A.R. reorient to his surroundings after a seizure which allows A.R. to get back to regular activities faster.

3. **It is necessary for C.C. to use his service dog while at school to maintain their bond.**

17. A stronger bond between Carina and A.R. results in more consistent correct pre alerts. For a service dog to be effective, the individual and the service dog must form and sustain a bond.  The team bond allows Carina to become familiar with A.R. and to perceive small changes in A.R. prior to a seizure.  If the relationship is not created

and maintained, Carina will not be able to perform the work she was trained to do. Moreover, if a service dog does not consistently spend time with the person being assisted, the dog will become confused about its role as a working service animal and the necessary relationship between the service dog and the person will not be formed or will deteriorate.

### C. The District Refuses to Accommodate A.R.'s Request to use his Service Dog While at School.

18. Dating back to 2010, A.R.'s mother, Jamie Riley, made a request to the school district that A.R. be allowed to attend school and extra-curricular activities with his service dog. After some resistance from Ms. Tuite, the special education director, the SAU did recognize Carina as a service animal, but would not include her in A.R.'s IEP. The District then refused to allow the school staff to interact, in any way, with Carina, after discussion with the school board, it was determined that Carina would be allowed to attend school with A.R., and if it went well, Carina would be allowed to attend school into the next school year. It was further determined that A.R.'s paraprofessional would be responsible for handling Carina.

19. Mrs. Riley offered to come in for 4 weeks to train the paraprofessional working with Carina, but after 3 days of training in the school, the school declined further training.

20. Carina successfully attended school and continued attending school into the following school year. However, in November 2011 the school returned to their position that Carina was not necessary for A.R.'s disability and that Carina did not successful alert to seizures. The school further alleged that the paraprofessional could not handle A.R. and Carina at the same time. Since February 6, 2012, the school has refused

trying another paraprofessional to handle A.R. and Carina. Since that date, the Riley family has been forced to pay a handler from their own meager resources.

21. The Riley Family have, since that date, been paying a handler to simply hold Carina's lease. When the handler goes to the bathroom, or otherwise must leave A.R.'s side, Carina is forced to accompany the handler leaving A.R. without the benefit of Carina.

22. The Riley Family filed a complaint with the United States Department of Justice which resulted in an agreement between the District and the Office of Civil Rights which the District, immediately and completely, ignored.

23. On March 2, 2015, A.R. left school to have brain surgery in an effort to reduce the number and severity of his seizures. He has been schooled at home since that date.

24. On April 8, 2015, the handler paid for by the Riley's, underwent breast cancer treatment, including chemotherapy and a mastectomy. She is no longer able to assist A.R., and the family cannot afford to find someone to replace her.

25. On April 14, 2015, A.R.'s IEP team met and informed the family that if A.R. did not return to school by April 30, 2015 he would be considered truant and treated as such. As the school will not assist with Carina and the family fears for A.R.'s safety without Carian, the family is at wits end and left with no choice but to file the present request for an injunction.

## FEDERAL CLAIMS

### COUNT I

### DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 USC §12132 et seq

26. Plaintiffs re-allege and incorporate by reference the allegations of facts in all preceding paragraphs.

27. Title II of the ADA prohibits any state or local government from discriminating against the person on the basis of disability, and provides that no person with a disability shall "be excluded from participation in or be denied the benefits of the services, programs, or activities of any public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

28. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms clinician continued to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

29. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

30. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."  42 U.S.C. §12132.  The legislative history of title II of the ADA makes clear both the ADA and the rehabilitation act authorize a private right of action to enforce the law.  Report of the House committee on education and labor affirms that: "[A]s with section 504, there is also a private

right of action for persons with disabilities which includes the full panoply of remedies. Again, consistent with section 504, it is not the committee's intent the persons with disabilities need to exhaust a federally administered to remedies before exercising the private right of action." H.R. Rep. No. 485(II), at 98 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 381. He

31. Title II of the ADA prohibits a public entity from discriminating is a qualified individual with a disability on the basis of disability. 42 U.S.C. §12132.

32. The ADA broadly defines public entity is any state or local government and any department, agency, special-purpose district, or other instrumentality of the state or states or local government. 42 U.S.C. §12131(1). This includes every possible agency of state or local government. *Id*. Hence, the ADA applies here.

33. The ADA's broad language brings within its scope "anything a public entity does." Pennsylvania Dep't of Corr. V. Yeskey, 118 F.3d 168, 171 (3d Cir. 1997), aff'd 524 U.S. 206 (1998) quoting 28 C.R.R. Pt. 35, App. A, preamble to ADA regulations). At all times relevant to this action, defendants were a "public entity"within the meaning of title II of the ADA provided a program, service or activity to the general public; namely public education.

34. Plaintiff's partial deafness, blindness, cognitive impairment, and severe seizure disorder substantially limit major life activities. Therefore, Plaintiff is an individual with a disability under Title II of the Americans with Disabilities Act. The Plaintiff meets the essential eligibility requirements for Defendant's services at all relevant times. Thus, the Plaintiff is a qualified individuals with a disability and entitled to the protections of the Americans with Disabilities Act under 42 USC § 12132, et seq.

35. As Defendants were aware, or should have been aware, of the risk of failing to provide an accommodation might violate plaintiff's civil rights, Defendants actions, as described above, were and are intentional.

36. The intentional refusal of Defendant to provide, or even discuss the possibility of providing, A.R. with reasonable accommodations, as described above, for his disabilities, violated the ADA, thereby entitling A.R. to all remedies available under federal law, including compensatory damages, punitive damages, costs and attorney's fees.

## COUNT II

### DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 USC § 706

37. Plaintiffs re-allege and incorporate by reference the allegations of facts in every preceding paragraph.

38. Plaintiff's partial deafness, blindness, cognitive impairment, and severe seizure disorder substantially limit major life activities. Therefore, Plaintiff is considered to be an individual with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 USC §706(8). Plaintiff is otherwise qualified under Section 504 of the Rehabilitation Act because he meets the essential eligibility requirements for Defendants services at all relevant times. Further, the Defendant is a recipient of federal financial assistance.

39. Defendants' policies, practices and procedures, particularly the actions and omissions described above, violated A.R's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

40. Defendants intentionally, and with deliberate indifference, violated Plaintiffs' rights through its repeated refusal to reasonably accommodate A.R. with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

41. Defendants' intentional violations of Section 504 are the proximate cause of damages to A.R., including decreased safety, emotional distress, reduced bond between A.R. and Carina, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that this Court grant the following relief against the Defendants:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973;

B. Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiffs equal access to, and benefit from Defendants. This includes entering a permanent injunction ordering Defendants:

1. To cease discrimination against Plaintiffs and disabled students and their families;

2. To promulgate and comply with policies and procedures to ensure that Defendants and their staffs do not discriminate against individuals who are disabled;

3. To promulgate and comply with procedures to ensure that Defendants will provide and pay for service animal handler or require para professional to handle Carina when needed for all services offered by Defendants;

C.    Schedule a trial by jury;

D.    Enter a judgment in favor of Plaintiffs awarding any and all relief available under law to the maximum extent allowed by common law, state and federal statutes, and the Constitutions of New Hampshire and the United States of America, including but not limited to the following:

    1.    Compensatory damages;

    2.    Enhanced Compensatory damages;

    3.    Reasonable costs, interest and attorneys' fees; and,

E.    Award any and all other relief that may be just, necessary and appropriate, including punitive damages.

Respectfully submitted,

A.R.,
JAMIE RILEY AND ALAN RILEY ON BEHALF OF THEIR SON, AND INDIVIDUALLY

By their attorneys,

NIXON, VOGELMAN, BARRY, SLAWSKY & SIMONEAU, P.A.

Dated: April 29, 2015    By:    */s/*    Kirk C. Simoneau (#19291)
77 Central Street
Manchester, NH 03101
(603) 669-7070
*ksimoneau@davenixonlaw.com*