# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW HAMPSHIRE

A.R.,
Jamie Riley and Alan Riley,
on behalf of their son,
    Plaintiffs

    v.                                 Case No. 15-cv-152-SM
                                          Opinion No. 2017 DNH 219

School Administrative Unit #23,
    Defendant

## **O R D E R**

Plaintiffs, A.R., and Jamie Riley and Alan Riley, on behalf of their son, A.R., filed suit on April 29, 2015, asserting violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504") by defendant School Administrative Unit #23 (the "District").[1]

A.R. is a student at Woodsville Elementary School who has been diagnosed with developmental delays, hypotonia, hearing loss, dysphagia, epilepsy, and cortical blindness. A.R., who is non-verbal, suffers from frequent seizures of multiple types

---

[1] Plaintiffs also brought suit against Dr. Donald A. LaPlante, the District's Interim Superintendent, but have since voluntarily dismissed all claims against him. See Document No. 46.

(drop, grand mal, temporal lobe). Those seizures impact A.R's independent mobility, and he requires significant support to be safe, to be mobile within his classroom and on the school campus, to care for his personal needs, and to communicate those needs to others.

A.R. receives special education and related services from the District pursuant to his individualized education plan ("IEP"). Those services include instruction from a special education teacher, a teacher of the deaf, and a teacher of the visually impaired, as well as related services of speech, physical therapy and occupational therapy. Since June of 2012, A.R. has also been accompanied by a one-on-one aide who, currently, is a registered nurse. The aide's responsibilities include: wiping his mouth to prevent skin irritation, feeding A.R., treating A.R.'s multiple seizures (by monitoring his breathing, placing him a safe location during seizures, and checking for ill effects resulting from the seizures), assisting A.R. with walking from place to place, and, on some days, providing instructional support.

A.R. has a service dog named Carina. Carina was trained by 4 Paws for Ability ("4 Paws") as a multipurpose service animal.

Carina alerts for seizures by licking A.R.'s face.  While Carina
is trained to go through the school day without needing to be
walked, eat or relieve herself, she requires a service animal
handler during the school day.  Because of A.R.'s cognitive,
sensory and physical limitations, he is not in a position to act
in that capacity.  After some initial resistance, the District
allows Carina to accompany A.R. at school.  However, the
District requires that A.R.'s parents provide and pay for a
handler to supervise Carina during the school day.  Plaintiffs
contend that, by refusing to provide and pay for a service dog
handler for Carina while A.R. is at school, the District has
failed to reasonably accommodate A.R.'s disability.

Upon filing suit, plaintiffs moved for a preliminary
injunction.  The Magistrate Judge held a hearing on that motion
on November 12, 2016, and issued her Report and Recommendation
on December 22, 2016, (document no. 39), recommending that
plaintiffs' motion be denied.  Neither party objected to the
Magistrate Judge's recommendation, and, on January 13, 2016, the
court approved that Report and Recommendation, denying
plaintiffs' motion for injunctive relief.

**The IDEA: Background**

In opposing plaintiffs' motion for preliminary relief, the District argued, in part, that plaintiffs were unlikely to succeed on the merits because they were required, but failed, to first exhaust their administrative remedies under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"). As our Supreme Court has explained, the IDEA:

> ensures that children with disabilities receive needed special education services. One of its provisions, § 1415(*l*), addresses the Act's relationship with other laws protecting those children. Section 1415(*l*) makes clear that nothing in the IDEA "restrict[s] or limit[s] the rights [or] remedies" that other federal laws, including antidiscrimination statutes, confer on children with disabilities. At the same time, the section states that if a suit brought under such a law "seek[s] relief that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures.

Fry v. Napoleon Cmty. Sch., ___ U.S. ___, 137 S. Ct. 743, 748, (2017).

The IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more concisely known as a FAPE – to all children with certain physical or intellectual disabilities." Id. at 748 (citing 20 U.S.C. §§ 1412(a)(1)(A) and 1414(3)(A)(i)). "[A] FAPE comprises 'special education and related services' – both 'instruction'

4

tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Id. at 748-49 (quoting 20 U.S.C. § 1401(9), (26), (29) (additional citations omitted).

The scope of "related services" under the IDEA is fairly broad. As the Supreme Court observed, "related services," as defined by the IDEA, "broadly encompass[] those supportive services that 'may be required to assist a child with a disability to benefit from special education.'" Cedar Rapids Community Sch. Dist. v. Garret F. by Charlene F., 526 U.S. 66, 73 (1999). "A service that enables a handicapped child to remain at school during the day is an important means of providing the child with the meaningful access to education that Congress envisioned." Irving Independent School Dist. v. Tatro, 468 U.S. 883, 891 (1984). "Services . . . that permit a child to remain at school during the day are no less related to the effort to educate than are services that enable the child to reach, enter or exit the school." Id.

An "individualized education program, called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." Fry, 137 S. Ct. at 749 (quoting Honig

v. Doe, 484 U.S. 305, 311 (1988)). In addition to documenting "the child's current 'levels of academic achievement,'" and specifying "measurable annual goals," the IEP also "lists the 'special education and related services' to be provided so that" the child may "advance appropriately toward [those] goals." Id. (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa)).

The IDEA "establishes formal procedures for resolving disputes" between parents and school representatives when they "cannot agree on such issues," and requires exhaustion of those procedures before seeking judicial review. Id. A plaintiff asserting claims arising "under the ADA, the Rehabilitation Act, or other similar laws, must in certain circumstances" exhaust the IDEA's administrative procedures prior to filing. Id. at 750. Our court of appeals has "recognized that exhaustion is mandatory in such cases, even though a party might seek relief that 'is not available in the administrative venue.' Mandatory exhaustion in such cases is both consistent with the legislative intent of the IDEA and practical because it 'facilitate[s] the development of a useful record.'" S.S. by S.Y. v. City of Springfield, Mass., 146 F. Supp. 3d 414, 418 (D. Mass. 2015) (quoting Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 62 (1st Cir. 2002)). However, before the Supreme Court's February,

2017, opinion in Fry v. Napoleon Cmty. Sch., the full scope of the IDEA's exhaustion requirement was unsettled. See Fry, 137 S. Ct. at 752 (explaining that the Court granted certiorari "to address confusion in the courts of appeals as to the scope of § 1415(*l*)'s exhaustion requirement.").

## Fry v. Napoleon

In Fry, a Michigan elementary school refused to allow E.F., a student with a severe form of cerebral palsy, to bring her service dog, Wonder, to school. Fry, 137 S. Ct. at 750. The Frys filed suit under Title II of the ADA and Section 504 of the Rehabilitation Act. The school district moved to dismiss, arguing that the Frys were required to first exhaust the IDEA's administrative remedies procedures. Id. at 752. The Sixth Circuit agreed, finding that, "[b]ecause the harms to E.F. were generally 'educational' — most notably, the court reasoned, because 'Wonder's absence hurt her sense of independence and social confidence at school' — the Frys had to exhaust the IDEA's procedures." Id. (quoting Fry v. Napoleon Cmty. Schs., 788 F.3d 622, 627 (6th Cir. 2015)). In making that determination, the Sixth Circuit took the view that the IDEA's exhaustion requirements apply "whenever 'the genesis and

manifestations' of the complained-of harms were 'educational' in nature." Id. (quoting Fry, 788 F.3d at 627).

In this case, the District relied primarily upon the Sixth Circuit's opinion in Fry, arguing that the IDEA's administrative remedies must be exhausted before A.R.'s suit could be filed. In her report and recommendation, the Magistrate Judge carefully considered the Sixth Circuit's opinion, but found it distinguishable. She noted that, in Fry, the primary reason Wonder was in school was to develop and maintain a "bond" with E.F., which, the Sixth Circuit found was an educational goal. See Document No. 39, at 19. Here, the Magistrate Judge determined, the evidence demonstrated that Carina, A.R.'s service dog, was not related to A.R.'s educational goals. Instead, Carina was a "health and safety service used by A.R. to identify and alert for seizures." Id. at 18. And, she noted, the defendants seemingly agreed, as "defendants' counsel acknowledged that if Carina does not come to school, A.R. is not denied any program activity or service offered by the district." Id. Accordingly, the magistrate concluded, the IDEA's exhaustion requirement did not apply, as plaintiffs were not contending that A.R.'s IEP was inadequate or that he was receiving a substandard education. See id. at 17.

On February 22, 2017, the Supreme Court vacated the Sixth Circuit's decision in Fry, and clarified the scope of the IDEA's exhaustion requirement. 137 S. Ct. at 752. The Court held that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee – what the Act calls a 'free appropriate public education.'" Id. at 748. However, "[i]f a lawsuit charges such a denial, the plaintiff cannot escape § 1451(*l*) merely by bringing her suit under a statute other than the IDEA." Id. at 754.

The Court further held that, "in determining whether a suit indeed 'seeks' relief for such a denial [of a FAPE], a court should look to the substance, or gravamen, of the plaintiff's complaint." Id. at 752. The Court stated:

> In addressing whether a complaint fits that description, a court should attend to the diverse means and ends of the statutes covering persons with disabilities — the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other. The IDEA, of course, protects only "children" (well, really, adolescents too) and concerns only their schooling. § 1412(a)(1)(A). And as earlier noted, the statute's goal is to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her "unique needs." § 1401(29); see Rowley, 458 U.S., at 192, 198; supra, at 753 – 754.

> By contrast, Title II of the ADA and § 504 of the Rehabilitation Act cover people with disabilities of all ages, and do so both inside and outside schools. And those statutes aim to root out disability-based discrimination, enabling each covered person (sometimes by means of reasonable accommodations) to participate equally to all others in public facilities and federally funded programs. See supra, at 749 – 750. In short, the IDEA guarantees individually tailored educational services, while Title II and § 504 promise non-discriminatory access to public institutions. That is not to deny some overlap in coverage: The same conduct might violate all three statutes — which is why . . . a plaintiff might seek relief for the denial of a FAPE under Title II and § 504 as well as the IDEA. But still, the statutory differences just discussed mean that a complaint brought under Title II and § 504 might instead seek relief for simple discrimination, irrespective of the IDEA's FAPE obligation.
>
> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school — say, a public theater or library? And second, could an adult at the school — say, an employee or visitor — have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Id. at 755–56. The Court continued: "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the

history of the proceedings.  In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute — thus starting to exhaust the Act's remedies before switching midstream." Id. at 757.

The Court determined that the Sixth Circuit had erred by asking whether E.F.'s injuries were, broadly speaking, "educational" in nature, rather than "asking whether the gravamen of E.F.'s complaint charges, and seeks relief for, the denial of a FAPE." Id. at 758.  And, because "[u]nderstood correctly, § 1415(*l*) might not require exhaustion of the Frys' claim," the court remanded the case to the court below.  Id.

Given the intervening Supreme Court precedent since the Magistrate Judge's report and recommendation was issued, this court issued an order on March 10, 2017, asking that plaintiffs show cause why the case should not be stayed pending exhaustion of IDEA's remedies, or dismissed for failure to exhaust those administrative remedies.  At that time, the court denied defendants' pending summary judgment motion without prejudice, pending consideration of the IDEA administrative remedies issue. Both parties filed legal memoranda in response.

## Discussion

Plaintiffs argue that the relief they are seeking (provision of a service dog handler by the District) is not available to them under the IDEA, because that relief is not necessary to A.R.'s obtaining an appropriate education. They say that the requested accommodation relates only to medical issues, not A.R.'s educational needs. The District argues that while plaintiffs would not be entitled to the requested relief on the merits under the IDEA, still, the gravamen of plaintiffs' complaint is whether the District must provide supportive services necessary for Carina to attend school with A.R. – a request unique to the relationship between a disabled student and a school, and one that falls within the reach of the IDEA. That is, such relief "could" be obtained under the IDEA if necessary in a specific case. Therefore, defendants say, plaintiffs were required to first exhaust their IDEA administrative remedies before bringing suit.

This case is somewhat unique in that both parties agree, for different reasons, that plaintiffs cannot obtain the requested relief under the IDEA, because A.R. is not suffering educational harm. Neither party argues that Carina is educationally necessary for A.R., and both parties agree that

12

Carina does not assist A.R. in achieving any of the educational goals described in his IEP. And, plaintiffs are not alleging that A.R. is, in any way, being denied the benefit of a free and appropriate public education. In fact, as the magistrate judge noted, during the preliminary injunction hearing, A.R.'s mother testified that she was satisfied with the education that A.R. was receiving. See Document No. 47-1, at 111:23-112:1. However, the parties' agreement with respect to the IDEA issue is not dispositive: If the gravamen of plaintiffs' complaint implicates A.R.'s rights to a free and appropriate public education, then plaintiffs are required to exhaust their IDEA administrative remedies.

Distinguishing this case from most of those relied on by plaintiffs, is the fact that the District readily accommodates A.R.'s need for a service animal. Several courts have determined that claims involving a school district's refusal to allow a service dog to accompany a student to school do not implicate the IDEA and its administrative scheme. See, e.g., Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 951 (E.D. Cal. 1990). Here, however, plaintiffs are not complaining that the District is discriminating against A.R. on the basis of his disability by refusing him access when

accompanied by his service dog.  Instead, the crux of plaintiffs' complaint is that the District discriminates against A.R. by refusing to pay for and provide a handler for Carina. So, plaintiffs are not merely asking that the District allow A.R. to be accompanied by his service dog while he is at school. Instead, plaintiffs want the District to hire, train and pay for a handler for Carina.

Plaintiffs argue that the gravamen of their complaint actually addresses an entirely unrelated issue:  the District's failure to comply with a settlement agreement the parties reached in earlier proceedings before the Office of Civil Rights of the U.S. Department of Education.  See Pls.' Br. at 8.  But that argument is not supported by the filed complaint, which contains only one passing reference to the settlement agreement, no discussion of its terms, or the parties' respective obligations under it, no specifics concerning how the District failed to comply with the agreement, and no claims for relief for its breach.  There surely is a venue and a means by which claims of right arising under an agreement or administrative consent decree can be resolved, but this lawsuit does not provide either given the complaint as filed.

In their complaint, plaintiffs allege that, through Carina's alerts, "A.R. can be directed to a safe location and decrease the chance that an injury will result," that Carina provides "psychological benefit" to A.R. as a constant presence in his life, and that Carina's presence at school is necessary to maintain her bond with A.R. Compl. ¶¶ 11, 16-17. Plaintiffs allege that A.R. is being denied "equal access" to school because the school will not provide him with the necessary handler for Carina.

With respect to A.R.'s IEP, plaintiffs allege in their complaint that the District refused to include Carina in A.R.'s IEP. See compl. ¶¶ 18, 20. At the preliminary injunction hearing, Ms. Riley testified that, at some point, she had asked to add Carina and a handler to A.R.'s IEP, but was told "no." See Document No. 47-1 at 112. On March 6, 2012, plaintiffs sent a letter to the District indicating that they were not:

> currently going to pursue adding Carina to [A.R.'s] IEP. However, if you plan to address a change in [A.R.'s] aide managing Carina in the school settling then I wish to proceed under the ADA.

Preliminary Inj. Hearing, Pls. Exh. 5. Finally, A.R.'s current IEP notes that his parents will provide him with certain items and supplies while he attends school, including a seizure alert

15

dog and an adult handler for the service dog.  See Document No. 44-7.

So, while plaintiffs insist that they are not taking issue with the adequacy of A.R.'s education or his IEP, the complaint discloses that plaintiffs are dissatisfied with the level of services (or support) the District is providing to A.R.  In Fry, the court noted that the complaint "allege[d] only disability-based discrimination, without making any reference to the adequacy of the special education services [plaintiff's] school provided."  137 S. Ct. at 758.  Here, in contrast, plaintiffs do allege that the level of supportive services provided by the District is inadequate, because the District refuses to provide a handler to issue verbal commands to Carina, hold Carina's leash while she is with A.R., and employ Carina in accordance with A.R.'s seizure protocol.

Given the hypothetical questions identified by the Court in Fry, one must ask: (1) Could plaintiffs bring the same claim if the alleged conduct occurred at a public institution other than a school?; and (2) Could an adult at the school have pressed essentially the same grievance?  Fry, 137 S. Ct. at 756.  The answer to both questions is no.  Plaintiffs could not state a

cognizable claim for relief under the ADA or Rehabilitation Act against, for example, a public library based on the library's failure to provide a handler for Carina while A.R. was visiting the library.  Nor could an adult state a cognizable claim against a school based on that school's refusal to provide a handler for the adult's service animal while visiting the school.  That is in part because, under the ADA, "[a] public entity is not responsible for the care or supervision of a service animal."  28 C.F.R. § 35.136(e); Cf., U.S. v. Gates-Chili Central Sch. Dist., 198 F. Supp. 3d 228, 234 (W.D.N.Y. 2016) (finding that school district had no obligation under the ADA or its regulations to "provide handling services" for a student's service dog).

Of course, Fry's hypothetical questions were not meant to be taken as bright line tests.  But the answers here suggest that the rights claimed by plaintiffs are unique to a student's effort to obtain an appropriate public education.  And, the parties' past relationship plainly suggests that plaintiffs are, in actuality, seeking relief related to A.R.'s educational entitlements, notwithstanding their denials in unison.  In her March 6, 2012, letter, A.R.'s mother stated that, rather than initiating IDEA administrative proceedings to add Carina to

A.R.'s IEP, the family would instead be proceeding under the
ADA. While the record is unclear as to whether plaintiffs at
any point did attempt to invoke the IDEA's formal procedures
with respect to Carina's services, the March 6, 2012, letter
lends some support to a finding that the gravamen of plaintiffs'
suit concerns the denial of a FAPE.

Finally, plaintiffs seem to argue that exhaustion of their
IDEA remedies would have been futile. They contend that, even
if they were to seek relief through the IDEA's administrative
remedies, the hearing officer would have no authority to order
that relief because A.R.'s FAPE is not affected by the purported
discrimination at issue. Plaintiffs' expectations about what a
hearing officer might determine with respect to whether
providing A.R. with a handler for Carina is necessary for a FAPE
are of course not dispositive. A hearing officer might
determine that providing a handler for Carina falls within
"related services" that the District is required to provide to
A.R. under the IDEA.

As the magistrate judge fully explained in her order on
their motion for preliminary relief, plaintiffs are not entitled
to the relief they seek under either the ADA or the

Rehabilitation Act.  See Document No. 39 at 21-30; 32-37; see also Alboniga v. Sch. Bd. of Broward Cty. Fla., 87 F. Supp. 3d 1319, 1341 (S.D. Fla. 2015) ("Turning to the specific regulatory provisions at issue, 28 C.F.R. § 35.136(d) provides that '[a] service animal shall be under the control of its handler.' By implication, requiring a public entity to act as handler for and to control the service animal would not be a reasonable accommodation mandated by the ADA.") (citations omitted); U.S. v. Gates-Chili Central Sch. Dist., 198 F. Supp. 3d at 234.  To the extent the relief sought by plaintiffs might be available at all, it is only available under the IDEA.  Accordingly, plaintiffs' claims fall within the reach of the IDEA, and Fry requires that they be dismissed for failure to first exhaust available administrative remedies.

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendants' briefing (document no. 55), plaintiffs' claims against the defendants are dismissed, albeit without prejudice. The Clerk of Court shall close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 12, 2017

cc: Kirk C. Simoneau, Esq.
    David P. Slawsky, Esq.
    Melissa A. Hewey, Esq.
    Dona Feeney, Esq.
    Jeanne M. Kincaid, Esq.
    Joshua S. Hilliard, Esq.